L. CHARLES WRIGHT, Retired Appellate Judge.
A petition to terminate the parental rights of A.C. (mother) to C.L.C. (minor son) was filed by the Madison County Department of Human Resources. A hearing was held on the petition. The Juvenile Court of Madison County granted the petition of DHR to terminate parental rights. The mother appeals.
In order to terminate parental rights based on the State’s petition, a court must make several findings. First, the court must determine that the child is dependent, based on clear and convincing evidence. Second, the court must find that there exists no viable alternative to termination of the parents’ custodial rights. Ex parte Beasley, 564 So.2d 950 (Ala.1990). The trial court was presented the evidence ore tenus; therefore, its decision is presumed to be correct and will be set aside only if the record reveals the decision to be plainly and palpably wrong. Varnadore v. Department of Human Resources, 543 So.2d 1194 (Ala.Civ.App.1989).
On appeal, the mother contends that there was a lack of clear and convincing evidence to support a dependency finding and that there were less drastic alternatives available rather than the termination of parental rights.
Although a child’s parents have a prima facie right to custody, the paramount concern in these proceedings is the child’s best interests. Mitchell v. State Dep’t of Human Resources, 513 So.2d 647 (Ala.Civ.App.1987). In determining the child’s best interests, the court must examine whether the parents are physically, financially, and mentally able to provide for their child. Mitchell. If clear and convincing evidence reveals that the parents cannot or are unwilling to discharge these responsibilities, parental rights may be terminated. Mitchell; § 26-18-7, Code 1975.
The record reflects that DHR became involved in the mother’s situation prior to the birth of the child when a run-away petition was filed on the then-13-year-old mother by her father. DHR has maintained a file on the mother since December 1987. At that time the case plan was to offer a group home placement for the mother. DHR learned of the mother’s pregnancy in March 1988. Eligibility services, Medicaid, and WIC services were offered to her. The department continued to search for a placement for the mother.
On September 21, 1988 the mother came to the department with the one-month-old child, stating that she did not have a place to live. She had walked to the department in the rain. She had not eaten in two days. She did not have warm clothing or any of the necessities for the baby. She told the social worker that she wanted to leave town but that she had no other specific plans. Trailways Bus Lines agreed to send the mother to Chicago, where her mother lived, on the Runaway' Program. On the same day that the mother appeared at the department, the department filed a petition seeking temporary legal custody of the child. After a hearing, the department’s petition was granted.
The department planned to return the child to the mother after an evaluation by the Illinois department established that the home in which she lived was adequate. The Illinois Department was unable to locate the mother at the address she had given; therefore no home study was made.
The mother returned to Alabama in March 1989 and was present for an administrative review held at the department. Following the review the mother agreed to live with her great-aunt and to accept homemaker services. Difficulties soon de *348 veloped between the mother and her aunt because the mother would not abide by the aunt’s rules and curfew. In June 1989 the mother moved out of her aunt’s home.
Between June 1989 and the date the petition was filed, the mother lived in approximately five different places. Home evaluations were not done of these places because each one of them was temporary.
The mother’s visitation with the child was sporadic. There were several instances in which months would pass before the mother contacted the department about visitation. Her last visit with the child was three months prior to the termination hearing.
The record is replete with other testimony supporting the court’s order, and to continue to recount it is unnecessary. We do note that at present the child is almost three years old and has been in foster care since he was one month old. The record reveals that he is well adjusted and because of his age is an excellent candidate for adoption proceedings. We find the court’s determination of dependency to be based on clear and convincing evidence and to be in the child’s best interests.
The mother asserts that DHR failed to adequately investigate and provide for family resource placement which would lead to rehabilitation with the mother. She specifically asserts that relative resource placement was available through her grandfather.
The record reflects that the social worker discussed the possibility of relative placement with the mother and the great-aunt. They gave the social worker a list of all of their relatives and their availability or willingness to take the child. There were no relatives who were willing to take the child. The social worker testified that she investigated the family members and that none were available.
The grandfather testified that he was willing to take custody of the child. The record reflects that presently the grandfather is 67 years old and has heart problems. He lives with his 69-year-old sister, his 68-year-old brother-in-law and the brother-in-law’s 90-year-old sister. The sister has hypertension and diabetes. The occupants of the house are on fixed incomes. The sister had attempted to assist the mother in 1989 by providing her a home in an attempt to regain custody of the child. The mother moved out of the home within four months.
In refusing to find the grandfather to be a viable alternative to termination, the court found the following:
“It is the judgment and opinion of the court that, considering the ages of the individuals living in that home and their respective conditions of health, as well as a prior placement effort in that home which failed, it is not in the best interests of [the child] for him to be placed either temporarily or permanently in the home of [the grandfather]. The court is satisfied of [the grandfather’s] sincerity in offering to make a home for [the child] but the court is firmly of the opinion that placement with an unrelated, healthier and younger family would be far better for [the child].”
We find that clear and convincing evidence was presented to support the trial court’s conclusion that no viable or reasonable alternative to termination, which would serve the best interests of the child, was available. The judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.